UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ROGELIO C. LORENZO, JR. AND LEAH M. LORENZO, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CAUSE NO. _____ |
| SERVIS ONE, INC., d/b/a BSI FINANCIAL SERVICES, | § § § | |
| US BANK TRUST, N.A. as trustee for IGLOO SERIES II TRUST | § § § | |
| EXPERIAN INFORMATION SOLUTIONS, INC. | § § § | |
| TRANS UNION LLC, AND | § § | |
| EQUIFAX INFORMATION SERVICES, LLC | § § § § | |
| Defendants. | § | JURY DEMAND |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

Rogelio C. Lorenzo Jr., and Leah M. Lorenzo, ("Plaintiffs" or the "Lorenzos"), file this suit against Servis One, Inc., d/b/a BSI Financial Services ("BSI"), US Bank Trust, N.A. as trustee for Igloo Series II Trust (the "Trust"), Experian Information Solutions, Inc. ("Experian"), Trans Union LLC ("TransUnion"), and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"), regarding improper mortgage servicing and accounting practices, as well as false, misleading, and inaccurate credit reporting resulting from such improper mortgage servicing and accounting practices that have resulted in serious, long-term financial harm for the Lorenzos.

## I.  INTRODUCTION

1.      The Lorenzos filed their Chapter 13 bankruptcy in 2014 to cure pre-petition mortgage arrearages.  After working for five years to complete their Chapter 13 bankruptcy, the Lorenzos received their Chapter 13 discharge in March of 2020.  Following their discharge, the Lorenzos tried to move on with their lives and gain access to credit markets.  However, due to BSI and the Trust's incompetence and unwillingness to comply with the Bankruptcy Court's orders, BSI and the Trust continued to send default letters to the Lorenzos for amounts they did not owe, including threats of unlawful foreclosure, despite the fact that the Lorenzos had cured their pre-bankruptcy mortgage arrearage and made all payments that came due since they filed their bankruptcy case.

2.      Following Plaintiffs' discharge, BSI repeatedly reported to the credit reporting agencies, falsely, that the Lorenzos' mortgage loan was seriously delinquent, causing the Lorenzos' credit scores to plummet. [1]

3.      When the Lorenzos demanded that BSI correct its accounting to show that the Lorenzos had been current on their account during and after their bankruptcy case, BSI merely made manual adjustments to the Lorenzos' mortgage account to show the Lorenzos current as of June 2021, but BSI failed to correct their accounting to show the Lorenzos had been current at all relevant times prior to that date.

4.      More importantly, BSI failed to correct its false reporting of the Lorenzos' account to the Credit Reporting Agencies.  After its adjustment to the Lorenzo account, BSI reported that the Lorenzos were current as of June 2021, but BSI still reported incorrectly that the Lorenzos were past due from at least June 2020 to June 2021.   Therefore, the Credit Reporting Agencies

---

[1] The credit reporting agencies, which include TransUnion, Equifax and Experian, are sometimes referred to herein collectively as the "Credit Reporting Agencies."

still reported that the Lorenzos had been seriously delinquent on their monthly mortgage payment obligation during that time period.  The Lorenzo credit reports reveal that this false and defamatory information was published by the Credit Reporting Agencies hundreds of times to at least thirty-five (35) different third parties.

5.      The Lorenzos have experienced substantial stress, humiliation, frustration, embarrassment and anxiety as a result of dealing with Defendants and the consequences of Defendants' careless actions with respect to their mortgage loan account and credit reporting.

6.      The Lorenzos and their counsel repeatedly informed BSI, the Trust and the Credit Reporting Agencies that the accounting for their mortgage loan was incorrect.  BSI failed to correct the Lorenzos' account completely, and the Credit Reporting Agencies failed to correct the false and inaccurate information reflected on the trade line for the Lorenzos' mortgage loan.  As a result, the Lorenzos have been at risk of losing their home to foreclosure and without access to the credit they need to move on with their lives.

## II.  PARTIES

7.      Plaintiff Rogelio C. Lorenzo, Jr. is an individual whose address is 1321 Berkley Court, Plano, Texas 75023.  Mr. Lorenzo was the debtor in *In re Rogelio C. Lorenzo, Jr.  and Leah Lorenzo* Case No. 14-42375, in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Case").

8.      Plaintiff Leah Lorenzo, Mr. Lorenzo's wife, is an individual whose address is 1321 Berkley Court, Plano, Texas 75024.  Mrs. Lorenzo was, along with Mr. Lorenzo, a debtor with Mr. Lorenzo in the Bankruptcy Case.

9.     The Lorenzos' home is collateral securing repayment of a promissory note dated September 24, 2004.  Initially, during their Chapter 13 bankruptcy, their loan was serviced by Bank of America, N.A., before BSI purchased the servicing rights for the Lorenzos' loan.

10.     Defendant Servis One, Inc., d/b/a BSI Financial Services is a foreign limited liability company incorporated in Delaware that may be served with process through its registered agent, Incorp Services, Inc., at 815 Brazos, Suite 500, Austin, Texas 78701-0000.

11.     Defendant US Bank National Association, as Trustee for Igloo Series II Trust is a foreign corporate fiduciary that may be served through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

12.     The relationship between the Trust and BSI is that of principal and agent, with the Trust acting as principal and BSI acting as agent with respect to servicing of Plaintiffs' mortgage loan account.

13.     At all times relevant to this suit, Defendant BSI acted as agent for the benefit of the Trust with respect to Plaintiffs' property located at 1321 Berkeley Court, Plano, Texas 75023.

14.     Defendant Experian Information Solutions, Inc. is a foreign for-profit corporation and credit reporting agency with its principal place of business located in Costa Mesa, California. Experian may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

15.     Defendant Trans Union LLC is a foreign limited liability company and credit reporting agency with its principal place of business located in Chicago, Illinois.  TransUnion may be served with process through its registered agent, The Prentice-Hall Corporation System, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

16.     Defendant Equifax Information Services, LLC is a foreign for-profit corporation and credit reporting agency with its principal place of business located in Atlanta, Georgia. Equifax may be served with process through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

### III.  JURISDICTION, AUTHORITY, AND VENUE

17.     As stated, this matter is related to *In re Lorenzo*, Case No. 14-42375 filed in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

18.     This Court has jurisdiction over this action proceeding pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The Court also has jurisdiction over the state law claims in the action pursuant to 28 U.S.C.§ 1367.  The Court also has jurisdiction under 28 U.S.C. § 1334 because Plaintiffs' Chapter 13 bankruptcy case was filed in this district, and because Plaintiffs assert claims and seek relief under the United States Bankruptcy Code, including contempt and sanctions for violation of the Plaintiffs' Chapter 13 Plan, the confirmation order, and 11 U.S.C. 524(i).

19.     Jurisdiction over bankruptcy matters is vested within the District Court, and the bankruptcy courts are authorized to administer bankruptcy cases under the District Court's jurisdiction pursuant to the District Court's standing order of reference entered on August 5, 1984. *See also Northern Pipeline Construction Company v. Marathon Pipeline Company*, 458 U.S. 50 (1982).  Because this matter seeks to enforce bankruptcy court orders entered pursuant to this Court's original subject matter jurisdiction over bankruptcy matters, venue is proper because this is the District and Division where such orders were entered in the Plaintiffs' Chapter 13 bankruptcy case.  In the interest of efficiency over preserving judicial resources, Plaintiffs have brought all of their claims in this single action, including claims that could be separately litigated before the

bankruptcy court that administered Plaintiffs' Chapter 13 case, as the bankruptcy and non-bankruptcy claims share the same nucleus of operative facts and are therefore appropriately brought in a single proceeding in this Court.

20.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs' claims occurred in this district, and Plaintiffs' Chapter 13 bankruptcy case was filed in this district.  Defendant BSI wrongfully demanded payment in this district, Defendants provided credit reports to and about persons in this district, and Defendants regularly transact business in this district.

## IV.  FACTUAL ALLEGATIONS

*The Homestead Loan*

21.     On September 24, 2004, Plaintiffs executed a promissory note in the amount of $155,600.00 with America's Wholesale Lender (the "Note") regarding Plaintiffs' property located at 1321 Berkley Court, Plano, Texas 75023 (the "Homestead Property").  Plaintiffs also executed a Deed of Trust in favor of America's Wholesale Lender, which granted the lender a security interest in the Homestead Property to secure payment of the Note (the "Deed of Trust," together with the Note the "Homestead Loan").

22.     True and correct copies of the Note and Deed of Trust are attached as composite **Exhibit 1**.

*Plaintiffs' Chapter 13 Bankruptcy Filing*

23.     In 2014, Plaintiffs began to suffer financial hardship.  Mr. Lorenzo lost his job, and Mrs. Lorenzo had just given birth to their youngest son.  In addition, the Lorenzos were financially supporting another son, who was in college.

24.    On June 20, 2014, Plaintiffs executed a Loan Modification Agreement, which modified the terms of the Homestead Loan.[2]

25.    A true and correct copy of the Modification is attached hereto as **Exhibit 2**.

26.    Although the Modification was of some assistance, the Lorenzos financial woes continued, and they ultimately sought the assistance of bankruptcy counsel.

27.    On November 4, 2014, the Lorenzos filed a petition for relief under Chapter 13 of the Bankruptcy Code, which was assigned Case No. 14-42375 by the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division (the "Bankruptcy Court").  BK Docket No. 1.[3]

28.    At the time that Plaintiffs filed their Chapter 13 bankruptcy, Bank of America was servicing Plaintiffs' loan.

29.    On February 27, 2015, Bank of America filed a proof of claim for a pre-petition deficiency balance of $6,992.63.

30.    A true and correct copy of the February 27, 2015 Proof of Claim is attached hereto as **Exhibit 3**.

31.    Plaintiffs objected to the claim of Bank of America on the assertion that Bank of America had overstated the arrearage and interest rate, and the objection was resolved with an agreed order allowing the claim in the amount of $6,992.63 at 0% interest.  BK Docket Nos. 22, 27.  The agreed order entered at BK Docket No. 27 further provided that Plaintiffs would continue to make their post-petition payments direct to Bank of America per the terms of the Note and Deed of Trust.

---

[2] All references to the Homestead Loan herein shall include the modified terms set forth in the Modification.

[3] References to the docket in the Bankruptcy Case herein are set forth as "BK Docket No. __."

32.     The Lorenzos' mortgage loan was transferred from Bank of America to Federal National Mortgage Association ("Fannie Mae"), as creditor, care of Seterus, Inc., as servicer, on or about January 15, 2016.  BK Docket No. 29.

33.     On July 12, 2016, Fannie Mae filed a motion for relief from stay, alleging post-petition delinquencies on the mortgage loan account.  BK Docket No. 31.

34.     On August 17, 2016, Fannie Mae and the Plaintiffs entered into an agreed order (the "Agreed Order"), entered by the Bankruptcy Court, conditioning relief from the automatic stay and allowing the Plaintiffs to modify their Chapter 13 plan to add certain post-petition delinquent payments under their mortgage loan and certain attorneys' fees in the total amount of $15,633.72 to their plan.  The Agreed Order ordered the Plaintiffs to resume their direct post-petition monthly mortgage payments to Seterus starting with the September 1, 2016 payment.

35.     A true and correct copy of the Agreed Order is attached hereto as **Exhibit 4.**

36.     On October 17, 2016, the Plaintiffs filed a plan modification with the Court to add the Agreed Order amount of $15,633.72, and on December 7, 2016, an order was issued by the Court approving the Modification.

37.     A true and correct copy of the Plan Modification and order approving same is attached hereto as composite **Exhibit 5**.

38.     Fannie Mae, and Fannie Mae c/o Seterus, were served with the motion and the order.  *See id.*

39.     On May 4, 2017,  Fannie Mae filed a notice of payment change, indicating that the monthly mortgage payment would be $1,327.07 beginning with the June 1, 2017 payment.

40.     A true and correct copy of the May 4, 2017 Notice of Payment Change is attached hereto as **Exhibit 6.**

**PLAINTIFFS' ORIGINAL COMPLAINT**                                                    **PAGE 8**

41.     On June 26, 2017, BSI Financial Services c/o U.S Bank Trust, N.A., as trustee of Bungalow Series F Trust ("BSI")[4] filed a notice of transfer of claim, stating that it was the transferee and that Fannie Mae was the transferor of the proof of claim originally filed by Bank of America.

42.     A true and correct copy of the June 26, 2017 Notice of Transfer is attached hereto as **Exhibit 7**.

43.     On January 30, 2020, the Chapter 13 Trustee filed her Notice of Final Cure and served it on BSI.

44.     A true and correct copy of the Notice of Final Cure is attached hereto as **Exhibit 8**.

45.     On February 20, 2020, BSI made an appearance in the case via counsel and filed its response to the Trustee's Notices of Final Cure, alleging, falsely, that the Plaintiffs were behind $2,784.56 in post-petition payments.

46.     A true and correct copy of BSI's response to the Notice of Final Cure is attached hereto as **Exhibit 9**.

47.     On March 12, 2020, the Bankruptcy Court entered an order of discharge for both Mr. and Mrs. Lorenzo.

48.     A true and correct copy of the order of discharge is attached hereto as **Exhibit 10**.

49.     The discharge order was served on BSI.  *See id.*

50.     The Chapter 13 Trustee filed her Final Report and Account on May 21, 2020, showing that she had paid in full the proof of claim pre-petition arrearage and the post-petition

---

[4] The Notice of Transfer of Claim identifies US Bank Trust, N.A., as trustee of Bungalow Series F Trust, as the owner of Plaintiffs' loan at the time of the transfer.  However, Defendants' subsequent response to Plaintiffs' Request for Information, Defendants have identified US Bank Trust, N.A., as trustee for Igloo Series II Trust as the owner. *See* Ex. 27, *supra*.

arrearage in the Agreed Order entered into with Bank of America and Fannie Mae (shown on the report as payments to US Bank Trust, N.A.)

51.    A true and correct copy of the Final Report and Account is attached hereto as **Exhibit 11**.

52.    Thus, the Plaintiffs paid all of their pre-petition deficiency as set out in the Proof of Claim in the amount of $6,992.63.  Plaintiffs paid their entire post-petition deficiency as set out in the Agreed Order in the amount of $15,633.72.  The Lorenzos also made all their post-petition monthly mortgage payments directly to BSI or its predecessors per the Agreed Order, beginning with the September 1, 2016 payment and continuing through their discharge in March of 2020 (and all times thereafter).

53.    Consistent with the May 4, 2017 Notice of Payment Change filed by Fannie Mae, beginning with the June 1, 2017 payment, the Plaintiffs made their monthly mortgage payment in the amount of $1,327.07 each month through the February 1, 2019 payment.

54.    In Plaintiffs' monthly mortgage statement dated January 17, 2019, BSI indicated that the monthly mortgage payment was $1,239.03.

55.    A true and correct copy of the January 17, 2019 monthly mortgage statement from BSI to Plaintiffs is attached hereto as **Exhibit 12.**

56.    Thus, the Lorenzos paid the $1,239.03 indicated on the BSI monthly mortgage statements.

57.    Because the $1,239.03 monthly mortgage payment amount BSI indicated in its statements to the Plaintiffs during from March 2019 through November 2019 was $88.04 less than the payment amount of $1,327.07 listed on the May 4, 2017 notice of payment change, the

Lorenzos made a payment to BSI in the amount of $792.36 on March 4, 2021, which cleared their bank account on March 8, 2021. ($88.04 alleged monthly shortage amount x 9 months = $792.36).

58.    A true and correct copy of proof of the Lorenzos' March 4, 2021 payment in the amount of $792.36 is attached hereto as **Exhibit 13**.

59.    On November 5, 2019, BSI filed a notice of payment change, indicating that the monthly mortgage payment would be $1,351.47, beginning with the December 1, 2019 payment. The Lorenzos made their December 2019 and January 2020 mortgage payment in the amount of $1,351.47 each.

60.    A true and correct copy of the November 5, 2019 Notice of Payment Change is attached hereto and included in composite **Exhibit 14**.

61.    On January 8, 2020, BSI filed a notice of payment change, stating that the monthly mortgage payment would be $1,433.09 beginning with the February 1, 2020 payment.  The Lorenzos began making the monthly payment in the amount of $1,433.09, starting with the February 1, 2020 payment and continuing through the January 2021 payment.

62.    A true and correct copy of the January 8, 2020 Notice of Payment Change is attached hereto and included in composite Exhibit 14.

63.    On October 5, 2020, Plaintiffs timely made their October 2020 payment in the amount of $1,433.09.  Plaintiffs' October 5, 2020 payment cleared their bank account on that same day.  *See* Exhibit 16, *supra*.  On January 5, 2021, BSI returned this payment to Plaintiffs' bank account without explanation.  *Id*.  Accordingly, Plaintiffs made the October 2020 payment again on February 10, 2021, and this payment cleared Plaintiffs' bank account on February 16, 2021.  *Id*.

64.    The Lorenzos began making payments in the amount of $1,555.44 starting in February 2021, based on the adjusted escrow amounts effective on February 1, 2021.

65.     Also, on April 9, 2021, the Lorenzos made a payment in the amount of $190.00 for alleged property inspection fees and attorneys' fees asserted by Fannie Mae in a notice of post-petition mortgage fees, expenses, and charges filed on September 8, 2016,.

66.     A true and correct copy of the September 8, 2016 notice of post-petition mortgage fees, expenses, and charges is attached hereto and included in composite Exhibit 14.

67.     A true and correct copy of proof of the Lorenzos' April 9, 2021 payment in the amount of $190.00 is attached hereto as **Exhibit 15**.

68.     Proof of the Lorenzos' payments from the September 2016 payment through November of 2021 are attached as composite **Exhibit 16**.

69.     Effective as of December 1, 2021, servicing of the Lorenzo's mortgage loan was transferred by BSI to Fay Servicing LLC.  The Lorenzos have made all payments due under their mortgage loan to Fay Servicing LLC since the transfer of servicing to same.

### *BSI demands payment of amounts not due and sends notice of foreclosure*

70.     Both before and after their March 12, 2020 discharge, BSI sent the Plaintiffs monthly mortgage statements demanding huge amounts that, because of federal bankruptcy law and the Lorenzos' payments, were not actually due.

71.     True and correct copies of these mortgage statements are attached hereto as composite **Exhibit 17**.

72.     Although the Mortgage Statements for these periods did not expressly indicate late charges or other fees, they did indicate a significant and ever-changing balance owed as "Past Unpaid Post-Petition Amounts."  *Id.*

73.     BSI sent a default notice to the Lorenzos dated June 10, 2020 threatening foreclosure.  At that time, the Lorenzos were in fact not in default or past due on their mortgage

loan. The June 10, 2020 default notice states, falsely, that the delinquent balance was "$2,866.17" and "includes past due mortgage payments, late fees and any additional charges."

74.     A true and correct copy of the June 10, 2020 default letter is attached hereto as **Exhibit 18**.

75.     BSI sent a default notice to the Lorenzos dated August 10, 2020 threatening foreclosure. At that time, the Lorenzos were not in default or past due on their mortgage loan. The August 10, 2020 default notice states, falsely, that the delinquent balance was "$2,941.72" and "includes past due mortgage payments, late fees and any additional charges."

76.     A true and correct copy of the August 10, 2020 default letter is attached hereto as **Exhibit 19**.

77.     BSI sent a default notice to the Lorenzos dated September 10, 2020, asserting that Plaintiffs were delinquent in the amount of $3,085.02. In fact, the Lorenzos were not in default or past due on their mortgage loan, as alleged in the September 10, 2020 default notice.

78.     A true and correct copy of the September 10, 2020 default letter is attached hereto as **Exhibit 20**.

79.     BSI also sent a default notice to the Lorenzos dated March 13, 2021 threatening foreclosure.  When BSI sent the letter, the Lorenzos were not in default or past due on their mortgage loan.  The March 13, 2021 default notice states, falsely, that the delinquent balance was "$3,792.74" and "includes past due mortgage payments, late fees and any additional charges."

80.     A true and correct copy of the March 13, 2021 default notice is attached hereto as **Exhibit 21**.

81.     BSI sent another default notice to the Lorenzos dated April 10, 2021, again threatening foreclosure.  When BSI sent the April 10, 2021 default notice, the Lorenzos were not

in default or past due on their mortgage loan.  The April 10, 2021 default notice states, falsely, that the delinquent balance was "$3,884.01" and "includes past due mortgage payments, late fees and any additional charges."

82.    A true and correct copy of the April 10, 2021 default letter is attached hereto as **Exhibit 22**.

***BSI showed Plaintiffs as past due because of BSI's failure to credit payments properly***

83.    Plaintiffs believe that BSI sent the incorrect mortgage statements because BSI had improperly misapplied and/or returned mortgage payments rather than applying them to the account.  *See* Exhibit 9 at pp. 4-5.

84.    As shown on the Form 4100R attached to Defendants' Response to Notice of Final Cure at Exhibit 9 hereto, this Form fails to list the payment for November 2018, which was sent via Western Union Quick Collect on November 23, 2018.  *See* Ex. 16, at p. 372 of the pdf, showing proof of the Western Union payment and a confirmation number of 404-038-5285.

85.    Ms. Lorenzo called BSI immediately after making this payment on November 23, 2018, and confirmed with BSI representative "Amy" that BSI had received the payment.

86.    The Form 4100R also fails to list or did not timely apply certain payments made by the Lorenzos during September through November of 2019.  Specifically, BSI failed to list Plaintiffs' payment on September 16, 2019 by Check No. 239.  BSI confirmed receipt of the payment on September 26, 2019 and the payment cleared Plaintiffs' bank account on September 30, 2019, but again, this payment was not listed on BSI's form 4100R.  *Compare* Ex. 9 (not showing payment for September 30, 2019) and Ex. 16, at pp. 499 and 503 of the pdf, showing Check No. 239.

87.    Plaintiffs made their October 2019 payment by Check No. 242 on October 15, 2019.  BSI received this payment on October 29, 2019.  However, BSI's Form 4100R shows that the funds did not clear Plaintiffs' bank account until November 22, 2019.  *Compare* Ex. 9 and Ex. 16, at pp. 523 and 527 of the pdf, showing Check No. 242.  BSI credited the payment a month late, despite the fact that payment was made in October of 2019.

88.    Plaintiffs made their November 2019 payment by Check No. 243 on November 15, 2019.  BSI received this payment on November 21, 2019.  However, BSI's Form 4100R shows that the Effective Date Used did not occur until December 6, 2019.  *Compare* Ex. 9 and Ex. 16, at pp. 538 and 541 of the pdf, showing Check No. 243.  Indeed, these funds did not clear Plaintiffs' bank account until December 6, 2019.   BSI credited the payment a month late, despite the fact that payment was made in November of 2019.

89.    Plaintiffs made their December 2019 payment by Check No. 246 on December 15, 2019.  BSI received this payment on December 16, 2019.  However, BSI's Form 4100R shows that this payment did not clear Plaintiffs' bank account until December 20, 2019.  *Compare* Ex. 9 and Ex. 16, at pp. 538 and 541 of the pdf, showing Check No. 243.  BSI incorrectly documents the date received for this payment as December 22, 2019.  *Id*.  As stated, this is incorrect because the funds left Plaintiffs' bank account on December 20, 2019.

90.    BSI's failure to properly apply the payments resulted in additional interest accruing and an improperly increased loan balance, which is secured by a lien against Plaintiffs' homestead.

91.    BSI and the Trust are sophisticated creditors and mortgage servicers, and they knew about and were legally obligated to comply with the Bankruptcy Court's orders and the provisions and purposes of the Bankruptcy Code and Rules.  BSI's misapplication of Plaintiffs' payments,

failure to promptly adjust the accounting to reflect the payment adjustments in the Agreed Order, and BSI's attempts to collect unlawful amounts were prohibited by these orders.

92.     Pursuant to federal bankruptcy law and the rulings and orders of the United States Bankruptcy Court for the Eastern District of Texas, the Lorenzos were completely current on their home mortgage loan at the time BSI made demand for payments that Plaintiffs did not owe and sent the aforementioned notices of default.

93.     Moreover, as discussed more fully below, BSI not only made improper demands on the Plaintiffs for payment of amounts not due, BSI incorrectly reported Mr. and Mrs. Lorenzo's mortgage loan account to the Credit Reporting Agencies, reporting Plaintiffs as grossly past due when they were completely current on their mortgage loan.

94.     Given applicable bankruptcy laws, the Bankruptcy Court's orders, and the notices BSI received, BSI had no fair ground of doubt that its demands and threats were direct violations of the Lorenzos' bankruptcy discharge, 11 U.S.C. § 524(i), as well as other federal and state law.

95.     Moreover, BSI had no fair ground of doubt that any additional demands it made upon the Lorenzos for moneys not owed, and any additional threats of foreclosure, would be direct violations of Plaintiffs' discharge, 11 U.S.C. § 524(i), as well as other federal and state law.

***Plaintiffs send RESPA correspondence to BSI in an attempt to resolve servicing errors***

96.     During the time that BSI was demanding that Plaintiffs pay amounts that were not due and sending notices unlawfully threatening foreclosure, Plaintiffs notified BSI of its accounting and reporting errors through written correspondence.

97.     Specifically, Plaintiffs, through their counsel, sent BSI qualified written requests, including Request for Information ("RFI") and Notices of Error ("NOE"), under 12 C.F.R. § 1024.35 and § 1024.36 of Regulation X, the implementing statute for the Real Estate Settlement

Procedures Act ("RESPA"), requesting information about their Homestead Loan and demanding that BSI correct the servicing errors which caused BSI to make improper demands for payment.

98.    On March 16, 2021, Plaintiffs sent Defendant BSI a RFI under 12 C.F.R. § 1024.36 requesting (a) a Reinstatement Quote regarding the Homestead Loan, (b) an itemized Reinstatement Quote regarding the Homestead Loan, (c) a payoff balance regarding the Homestead Loan, (d) a detailed and itemized Payoff Statement and (e) an exact reproduction of the life of loan mortgage transaction history for the Homestead Loan on the system of record used by BSI from the loan inception to the date of the response.

99.    A true and correct copy of the March 16, 2021 RFI is attached hereto as **Exhibit 23**.

100.    On March 17, 2021, Plaintiffs sent BSI an additional RFI requesting (a) the identity of and address of the current owner of the Homestead Loan, (b) the identity of and address for the master servicer of the Homestead Loan, and (c) the identity of and address for the current servicer of the Homestead Loan.  Plaintiffs also requested a complete, true and correct copy of the Note, Deed of Trust, and any modification thereof, as well as copies of all mortgage statements and escrow analyses for a specified period.

101.    A true and correct copy of the March 17, 2021 RFI is attached hereto as **Exhibit 24**.

102.    On March 24, 2021, BSI sent an acknowledgement of its receipt of the March 16, 2021 RFI.

103.    A true and correct copy of BSI's acknowledgement of receipt of the March 16, 2021 RFI is attached hereto as **Exhibit 25**.

104.    Also on March 24, 2021, BSI sent an acknowledgement of its receipt of the March 17, 2021 RFI.

105.    A true and correct copy of BSI's acknowledgement of receipt of the March 17, 2021 RFI is attached hereto as **Exhibit 26**.

106.    BSI sent Plaintiffs' counsel a response to Plaintiffs' March 17, 2021 RFI on March 24, 2021, in which it identified US Bank Trust National Association, as Trustee of the Igloo Series II Trust, as the owner or assignee of the Homestead Loan, and further provided a street address and telephone number for same.

107.    A true and correct copy of BSI's March 24, 2021 response to Plaintiffs' March 17, 2021 RFI is attached hereto as **Exhibit 27**.

108.    On March 26, 2021, BSI sent Plaintiffs an itemized Payoff Statement and itemized Reinstatement Quote in response to Plaintiffs' March 16, 2021 RFI.

109.    A true and correct copy of BSI's March 26, 2021 response is attached hereto as **Exhibit 28**.

110.    On April 14, 2021, Plaintiffs' counsel sent a NOE under 12 C.F.R. § 1024.35 to BSI providing a complete history of the case consistent with the facts set forth in this Complaint and asserting that BSI was violating RESPA by making demands for payment of amounts not due and threatening foreclosure when Plaintiffs were not in default.

111.    A true and correct copy of the April 14, 2021 NOE is attached hereto as **Exhibit 29**.

112.    On April 21, 2021, BSI sent a response to Plaintiffs' March 17, 2021 RFI, stating that the current mortgage servicer on the loan was BSI.

113.    A true and correct copy of the April 21, 2021 BSI response to Plaintiffs' March 17, 2021 RFI is attached hereto as **Exhibit 30**.

114.    In its April 21, 2021 response to Plaintiffs' March 17, 2021 RFI, BSI provided what it represented to be a complete, true and correct copies of the Note and Deed of Trust, as well as the Fannie Mae Modification Agreement. *Id*.

115.    BSI also provided copies of what it represented to be all mortgage statements sent by BSI to Plaintiffs, and further asserted that "BSI was not provided the billing statements generated by the prior servicer when the loan was transferred to BSI." *Id*.

116.    Further, BSI also provided copies of what it represented to be all escrow analyses performed on the loan by BSI, and further asserted that "BSI was not provided copies of the escrow statements generated by the prior servicer when the loan transferred to BSI." *Id*.

117.    On April 23, 2021, BSI acknowledged Plaintiffs' April 14, 2021 NOE.

118.    A true and correct copy of the April 23, 2021 acknowledgement is attached hereto as **Exhibit 31**.

119.    On May 20, 2021, BSI sent a letter to Plaintiffs' counsel in response to Plaintiffs' March 16, 2021 RFI.

120.    A true and correct copy of BSI's May 20, 2021 response letter is attached hereto as **Exhibit 32**.

121.    BSI's May 20, 2021 response alleges that it sent a prior response to Plaintiffs' March 16, 2021 RFI on April 29, 2021, but this response was "Returned to Sender" on May 17, 2021. *Id*.

122.    BSI's May 20, 2021 response included a copy of its alleged April 29, 2021 response, which included as an attachment a document, which BSI purported to be a complete pay

history. *Id.*  Only a portion of the pay history provided by BSI—from loan origination to May 16, 2017—was from a system of record (presumably the system of record for the previous servicer of the loan), as the remaining pay history appears to be a manually generated spreadsheet.

123.    The BSI pay history attached to its May 20, 2021 response incorrectly indicated that Plaintiffs were two months past due on their Homestead Loan.  *Id.* at p. 32.

124.    BSI sent Plaintiffs a letter dated May 28, 2021 in which it further acknowledged receipt of Plaintiffs' April 14, 2021 NOE and stated that it would provide a more detailed response within fifteen business days.

125.    A true and correct copy of BSI's May 28, 2021 letter is attached hereto as **Exhibit 33**.

126.    In a letter dated June 18, 2021, BSI responded to Plaintiffs' April 14, 2021 NOE by stating that "[a]fter reviewing the inquiry and conducting a thorough investigation, we determined that our system was reflecting an incorrect due date.  On June 8, 2021, we corrected our system to reflect that the loan was paid through June 1, 2021, and the next payment due is July 1, 2021.  The adjusted unpaid principal balance was adjusted to $153,599.87."

127.    A true and correct copy of the June 18, 2021 Response to Plaintiffs' April 14, 2021 NOE is attached hereto as **Exhibit 34**.

128.    BSI's June 18, 2021 response further stated that the "fees and late charges have been waived from the loan," and that "[a]s the date of this letter, the fee balance is $0.00 and the late charge balance is $0.00." *Id.*

129.    BSI stated that it had attached a payment history to its June 18, 2021 Response. *Id.*

130.    BSI concluded its June 18, 2021 Response by stating that it "apologizes for the error and any frustration that may have been caused." *Id.*

131.   BSI's June 18, 2021 Response did not, in fact, attach a copy of the pay history.

132.   Accordingly, Plaintiffs' counsel sent BSI an additional NOE dated October 14, 2021 in which counsel identified BSI's error in failing to include a pay history in its June 18, 2021 Response.

133.   A true and correct copy of Plaintiffs' October 14, 2021 NOE is attached hereto as **Exhibit 35**.

134.   On October 22, 2021, BSI acknowledged receipt of the October 14, 2021 NOE.

135.   A true and correct copy of BSI's October 22, 2021 acknowledgement is attached hereto as **Exhibit 36**.

136.   On November 23, 2021, BSI responded to Plaintiffs' October 14, 2021 NOE and stated that it had included a pay history in its original April 29, 2021 response to Plaintiffs' March 16, 2021 RFI, but acknowledged that BSI's June 18, 2021 response to Plaintiffs' April 14, 2021 NOE "erroneously did not contain payment history [*sic*]."

137.   A true and correct copy of BSI's November 23, 2021 Response to Plaintiffs' October 14, 2021 NOE is attached hereto as **Exhibit 37**.

138.   BSI attached a pay history to its November 23, 2021 Response. *Id*.

139.   The pay history attached to BSI's November 23, 2021 Response shows that BSI adjusted the account to reflect that the loan was paid through June 1, 2021, and the next payment due is July 1, 2021. However, these adjustments were made as one or more entries on June 8, 2021. As such, BSI did not adjust the entire history of the loan to show Plaintiffs current from the entry of the Agreed Order on August 17, 2016 going forward. Therefore, despite the account adjustment made on June 8, 2021, the BSI pay history still showed Plaintiffs as past due as of August 17, 2016 through June 2021.

140.    Thus, after two Notices of Error and two Requests for Information, BSI finally admitted that it made a mistake with Plaintiffs' mortgage loan account.  Unfortunately, however, BSI failed to correct the Plaintiffs' account appropriately and completely in response to Plaintiffs' RESPA correspondence.

**BSI's Incorrect Credit Reporting and Plaintiffs' Attempts to Dispute**

141.    Based on BSI's failure to correct Plaintiffs' account properly, Plaintiffs suspected that BSI was incorrectly reporting Plaintiffs to be past due on their mortgage loan with the Credit Reporting Agencies.

142.    On or about June 29, 2021, Plaintiffs checked their Experian credit reports.

143.    A true and correct copy of Leah Lorenzo's June 29, 2021 Experian credit report is attached hereto as **Exhibit 38**.

144.    A true and correct copy of Rogelio Lorenzo's June 29, 2021 Experian credit report is attached hereto as **Exhibit 39**.

145.    Plaintiffs' suspicions were confirmed. BSI was incorrectly reporting both Leah and Rogelio Lorenzo as past due for at least July 2020 through April 2021. *See* Ex. 38-39.

146.    In September of 2021, Plaintiffs checked their credit report with TransUnion.

147.    A true and correct copy of Leah Lorenzo's September 8, 2021 TransUnion credit report is attached hereto as **Exhibit 40**.

148.    A true and correct copy of Rogelio Lorenzo's September 8, 2021 TransUnion credit report is attached hereto as **Exhibit 41**.

149.     On each of Plaintiffs' TransUnion September 8, 2021 credit reports, TransUnion was incorrectly reporting both Leah and Rogelio Lorenzo as past due for at least July 2020 through

May 2021.  These reports also incorrectly state that there was a "Maximum Delinquency of 90 days in 10/2020 for $4,661 and in 01/2021 for $4,875."

150.    There was no actual delinquency on Plaintiffs' account at any time from October 2020 through January 2021 or at any time thereafter.

151.    Plaintiffs again checked their TransUnion reports in December of 2021.

152.    A true and correct copy of Leah Lorenzo's December 12, 2021 TransUnion credit report is attached hereto as **Exhibit 42**.

153.    A true and correct copy of Rogelio Lorenzo's December 12, 2021 TransUnion credit report is attached hereto as **Exhibit 43**.

154.    The September 12, 2021 TransUnion credit report for both Leah and Rogelio Lorenzo still incorrectly stated that Plaintiffs were past due for July 2020 through May 2021.

155.    The September 12, 2021 TransUnion credit report for both Leah and Rogelio Lorenzo also incorrectly repeated the incorrect status as the previous reports: "Maximum Delinquency of 90 days in 10/2020 for $4,661 and in 01/2021 for $4,875."

156.    On March 16, 2022, Plaintiffs' counsel sent a dispute letter to TransUnion for each Plaintiff.

157.    A true and correct copy of the March 16, 2022 dispute letter to TransUnion for Leah Lorenzo is attached hereto as **Exhibit 44**.

158.    A true and correct copy of the March 16, 2022 dispute letter to TransUnion for Rogelio Lorenzo is attached hereto as **Exhibit 45**.

159.    The March 16, 2022 dispute letters to TransUnion for the Plaintiffs each disputed information provided by BSI in the September 12, 2021 TransUnion reports.

160.    Plaintiffs copied BSI with the March 16, 2022 TransUnion dispute letters.

161.    BSI received their copy of Leah Lorenzo's March 16, 2022 TransUnion dispute letter on March 18, 2022.

162.    A true and correct copy of BSI's receipt of Leah Lorenzo's March 16, 2022 TransUnion dispute letter is attached hereto as **Exhibit 46**.

163.    TransUnion received their copies of Leah Lorenzo's March 16, 2022 TransUnion dispute letter and Rogelio Lorenzo's March 15, 2022 TransUnion dispute letter on March 21, 2022.

164.    A true and correct copy of TransUnion's receipts of Rogelio and Leah Lorenzo's March 16, 2022 TransUnion dispute letters are attached hereto as composite **Exhibit 47**.

165.    BSI received their copy of Rogelio Lorenzo's March 16, 2022 TransUnion dispute letter on or before March 25, 2022. Although the return receipt for Rogelio Lorenzo's May 16, 2022 TransUnion dispute letter indicates that BSI did not sign or return the receipt (and therefore it was signed by the staff of Plaintiff's counsel), BSI subsequently sent an acknowledgement of receipt of Rogelio Lorenzo's March 16, 2022 TransUnion dispute letter on March 25, 2022.

166.    A true and correct copy of the return receipt for Rogelio Lorenzo's March 16, 2022 TransUnion dispute letter is attached hereto as **Exhibit 48**.

167.    A true and correct copy of BSI's acknowledgment of the receipt for Rogelio Lorenzo's March 16, 2022 TransUnion dispute letters is attached hereto as **Exhibit 49**.

168.    BSI sent an acknowledgement of receipt of Leah Lorenzo's March 16, 2022 TransUnion dispute letter on March 30, 2022.

169.    A true and correct copy of BSI's acknowledgment of the receipt for Leah Lorenzo's March 16, 2022 TransUnion dispute letters is attached hereto as **Exhibit 50**.

170.    On information and belief, TransUnion transmitted Plaintiffs' dispute to BSI for reinvestigation.

171.    On March 24, 2022, Plaintiffs obtained their credit reports from Equifax.

172.    A true and correct copy of Leah Lorenzo's March 24, 2022 Equifax credit report is attached hereto as **Exhibit 51**.

173.    A true and correct copy of Rogelio Lorenzo's March 24, 2022 Equifax credit report is attached hereto as **Exhibit 52**.

174.    The March 24, 2022 Equifax credit report for Leah Lorenzo incorrectly stated that she was past due for June 2020 through April 2021.  *See* Ex. 51.

175.    The March 24, 2022 Equifax credit report for Rogelio Lorenzo incorrectly stated that he was past due for July 2020 through April 2021.  *See* Ex. 52.

176.    Also on March 24, 2022, Plaintiffs obtained their credit reports from Experian.

177.    A true and correct copy of Leah Lorenzo's March 24, 2022 Experian credit report is attached hereto as **Exhibit 53**.

178.    A true and correct copy of Rogelio Lorenzo's March 24, 2022 Experian credit report is attached hereto as **Exhibit 54**.

179.    The March 24, 2022 Experian credit report for both Leah and Rogelio Lorenzo incorrectly stated that they were past due for July 2020 through May 2021.  *See* Ex. 53-54.

180.    On April 5, 2022, TransUnion responded to Plaintiffs' dispute letter.

181.    A true and correct copy of TransUnion's April 5, 2022 response to Leah Lorenzo's dispute letter is attached hereto as **Exhibit 55**.

182.    A true and correct copy of TransUnion's April 5, 2022 response to Rogelio Lorenzo's dispute letter is attached hereto as **Exhibit 56**.

183.    The April 4, 2022 responses indicated that TransUnion updated the BSI tradeline on both Plaintiffs' credit reports.  *Id.* and Exhibit 55.  However, the new BSI tradeline still reflects

the status of Plaintiffs' mortgage loan as 30-90 days past due for the months of July 2020 through May 2021.

184.    The April 4, 2022 TransUnion responses also state that "Maximum Delinquency of 90 days in 10/2020 for $4,661 and in 01/2021 for $4,875." *Id*. at Exhibits 47, 48.

185.    Plaintiffs were not past due on their mortgage account for the months of July 2020 through May 2021.

186.    Plaintiffs did not have a "Maximum Delinquency of 90 days in 10/2020 for $4,661 and in 01/2021 for $4,875" as alleged in the April 5, 2022 response letters from TransUnion.

187.    As stated, Plaintiffs were current under their mortgage loan at all times from July 2020 through May 2021.

188.    On April 12, 2022, Plaintiffs' counsel sent a dispute letter to Equifax for each Plaintiff.

189.    A true and correct copy of the April 12, 2022 dispute letter to Equifax for Leah Lorenzo is attached hereto as **Exhibit 57**.

190.    A true and correct copy of the April 12, 2022 dispute letter to Equifax for Rogelio Lorenzo is attached hereto as **Exhibit 58**.

191.    The April 12, 2022 dispute letters to Equifax for the Plaintiffs each disputed information provided by BSI in the March 24, 2022 Equifax reports.

192.    Upon information and belief, Equifax transmitted Plaintiffs' dispute letter to BSI for reinvestigation.

193.    Also on April 12, 2022, Plaintiffs' counsel sent a dispute letter to Experian for each Plaintiff.

194.    A true and correct copy of the April 12, 2022 dispute letter to Experian for Leah Lorenzo is attached hereto as **Exhibit 59**.

195.    A true and correct copy of the April 12, 2022 dispute letter to Experian for Rogelio Lorenzo is attached hereto as **Exhibit 60**.

196.    The April 12, 2022 dispute letters to Experian for the Plaintiffs each disputed information provided by BSI in the March 24, 2022 Experian reports.

197.    Experian received the April 12, 2022 Experian dispute letter for Leah Lorenzo on April 13, 2022.

198.    A true and correct copy of the return receipt for the April 12, 2022 Dispute Letter to Experian from Leah Lorenzo is attached hereto as **Exhibit 61**.

199.    Upon information and belief, Experian transmitted Plaintiffs' dispute letter to BSI for reinvestigation.

200.    BSI received the April 12, 2022 Equifax dispute letters for Leah Lorenzo and Rogelio Lorenzo on April 15, 2022.

201.    True and correct copies of the return receipt from BSI for the April 12, 2022 Dispute Letter to Equifax for Leah and Rogelio Lorenzo are attached hereto as composite **Exhibit 62**.

202.    BSI received the April 12, 2022 Experian dispute letters for Rogelio Lorenzo and Leah Lorenzo on April 18, 2022.

203.    True and correct copies of the return receipts from BSI for the April 12, 2022 Dispute Letters to Experian for Rogelio Lorenzo and Leah Lorenzo is attached hereto as composite **Exhibit 63**.

204.    Experian sent a response to the April 12, 2022 dispute letter for Leah Lorenzo dated April 22, 2022 (faxed to the undersigned counsel from Experian on April 26, 2022).

205.    A true and correct copy of the April 22, 2022 Experian response to Plaintiffs' April 12, 2022 dispute letter for Leah Lorenzo is attached hereto as **Exhibit 64**.

206.    Experian received the April 12, 2022 Experian dispute letter for Rogelio Lorenzo on April 18, 2022.

207.    A true and correct copy of the return receipt for the April 12, 2022 Dispute Letter to Experian from Rogelio Lorenzo is attached hereto as **Exhibit 65**.

208.    Equifax received the April 12, 2022 Equifax dispute letter for Leah Lorenzo on April 20, 2022.

209.    A true and correct copy of the return receipt for the April 12, 2022 Dispute Letter to Equifax from Leah Lorenzo is attached hereto as **Exhibit 66**.

210.    The April 22, 2022 Experian response to Plaintiffs' April 12, 2022 dispute letter for Leah Lorenzo acknowledges receipt of the dispute letter and states that Experian is "currently reinvestigating the information with which the consumer disagrees.  Upon completion of this process, we will provide the results of our investigation directly to your client."  *Id.*

211.    Experian has failed to provide any reinvestigation results to Plaintiffs, or otherwise make any additional communications with Plaintiffs or their counsel after Experian's initial April 22, 2022 response.

212.    On April 28, 2022, BSI responded to the March 16, 2022 TransUnion dispute letter for Leah Lorenzo.

213.    A true and correct copy of BSI's response to Plaintiffs' March 16, 2022 TransUnion dispute letter for Leah Lorenzo is attached hereto as **Exhibit 67**.

214.    In its April 28, 2022 response, BSI stated:

After thoroughly investigating your concern by reviewing your account and all relevant information available, we have determined that the information that we

reported to the Credit Reporting Agencies is correct.  We have enclosed a copy of Ms. Lorenzo's payment history.  Our records indicate that adjustments were approved and payment waivers were completed to bring the loan current in June 2021.  This is also reflected in our credit reporting.

215.    The pay history attached to BSI's April 28, 2022 response reflects that certain adjustments were made to show the Homestead Loan current from June 2021 forward.  However, BSI did not correct the pay history for time periods prior to June 2021.

216.    Because BSI did not correct the pay history for time periods prior to June 2021, the BSI pay history continues to show Plaintiffs were past due from July 2020 through June 2021.  *Id.*

217.    As stated, Plaintiffs were not past due at any point from July 2020 through June 2021.  As stated, Plaintiffs were current under their mortgage loan at all times from July 2020 through May 2021.

218.    In fact, Plaintiffs had remained current at all times since the entry of the Agreed Order modifying stay entered on August 17, 2016 in their Chapter 13 case.

219.    Therefore, BSI failed to correct the accounting on Plaintiffs' loan to reflect accurately all of the payments made by Plaintiffs during and after their Chapter 13 case.

220.    The pay history attached to BSI's April 28, 2022 response indicates that BSI never took any action to correct Plaintiffs' account to comply with the Agreed Order or any other order entered by the Bankruptcy Court with regard to Plaintiffs' mortgage loan account.

221.    BSI only adjusted the account in April of 2022 to show Plaintiffs current as of June 2021.

222.     On May 25, 2022, BSI responded to the April 12, 2022 Experian dispute letter for Rogelio Lorenzo, the April 12, 2022 Equifax dispute letters for both Leah Lorenzo and Rogelio Lorenzo, and the March 16, 2022 TransUnion dispute letter for Rogelio Lorenzo.[5]

223.     A true and correct copy of BSI's response to Plaintiffs' April 12, 2022 Experian dispute letter for Rogelio Lorenzo, the April 12, 2022 Equifax dispute letters for both Leah Lorenzo and Rogelio Lorenzo, and the March 16, 2022 TransUnion dispute letter for Rogelio Lorenzo is attached hereto as composite **Exhibit 68**.

224.     In its May 25, 2022 response, BSI stated:

After reviewing the inquiry and a thorough investigation, we determined that as advised in our most recent response letter dated April 28, 2022, the information that we reported to the Credit Reporting Agencies is correct.  We have enclosed a copy of Mr. Lorenzo's payment history.  Our records indicate that adjustments were approved and payment waivers were completed to bring the loan current in June 2021.  This is also reflected in our credit reporting.

225.     The pay history attached to BSI's May 25, 2022 response reflects that certain adjustments were made in June 2021 to show the Homestead Loan current from June 2021 forward. However, BSI did not correct the pay history for time periods prior to June 2021.

226.     Because BSI did not correct the pay history for time periods prior to June 2021, the BSI pay history continues to show Plaintiffs were past due prior to June 2021.  *Id.*

227.     Again, Plaintiffs were not past due at during the time periods in which Defendants were reporting them as past due to the Credit Reporting Agencies, including the period from July 2020 through June 2021.  Plaintiffs were current under their mortgage loan at all times from July 2020 through June 2021.

---

[5] BSI made a single, combined response to each of these dispute letters listed above, and BSI attached each of the dispute letters to their combined response.

228.    In fact, Plaintiffs had remained current at all times since the entry of the Agreed Order modifying stay entered on August 17, 2016 in their Chapter 13 case.

229.    Therefore, BSI failed to correct the accounting on Plaintiffs' loan to reflect accurately all of the payments made by Plaintiffs during and after their Chapter 13 case.

230.    The pay history attached to BSI's May 24, 2022 response indicates that BSI never took any action to correct Plaintiffs' account to comply with the Agreed Order.

231.    BSI only adjusted the account—on June 8, 2021—to show Plaintiffs current as of June 2021.

232.    BSI continued to report Plaintiffs were delinquent on their mortgage account at all reported times prior to June of 2021.  Therefore, BSI failed to correct Plaintiffs' account.

233.    BSI compounded this failure by responding to Plaintiffs' credit dispute letters that its reporting was correct.

234.    BSI's failure to comply with the provisions and purposes of FCRA and the Bankruptcy Code and Rules is willful, wanton, and inexcusable.  BSI's repeated demands for Plaintiffs to pay money they did not owe violated the Plaintiffs' discharge order invoking the statutory injunction established under 11 U.S.C. § 524(i).  BSI's actions abuse the bankruptcy processes, violate additional bankruptcy laws and rules, and violate other federal and state statutes and laws.

235.    Moreover, this is not an isolated incident, as BSI has shown a pattern and practice of improperly demanding amounts discharged in borrower's bankruptcy proceeding,[6] violating the

---

[6] *See McCamis v. Servis One, Inc., d/b/a BSI Financial Services*; Case No: 8:16-cv-1130; 2016 WL 4063403 at *4 (M.D. Fla., July 29, 2016) (Summary judgment by BSI denied on plaintiff's allegation that BSI demanded amounts which had been discharged in a bankruptcy case).

automatic stay in attempting to collect debts not in fact owed,[7] and improperly reporting the status of debts to the Credit Reporting Agencies,[8] among other unlawful acts.

236.    The CFPB also conducted an investigation of BSI's practices and determined that, by consent order signed on May 24, 2019, BSI violated RESPA and Regulation X by maintaining an inadequate document management system that prevented BSI's personnel or consumers from readily obtaining accurate information about mortgage loans, as well as handling mortgage servicing transfers with incomplete or inaccurate information regarding various aspects of mortgage accounts, all during the time period just before BSI on-boarded Plaintiffs' mortgage loan. *See* **Exhibit 69**.  BSI has entered into a settlement with the CFPB which requires BSI to pay a civil money penalty and restitution to affected consumers.  *Id.*  BSI is also required to implement policies and procedures—through a comprehensive Data Integrity Program—reasonably designed to ensure the accuracy, integrity, and completeness of the data and other information about loans that BSI services, including loans acquired by BSI from prior servicers.[9]  *Id.*

237.    The CFPB settlement is noteworthy because it appears that BSI did not review the orders in Plaintiffs' bankruptcy case or the accounting for Plaintiffs' mortgage account that the previous servicer transferred to BSI, and therefore BSI showed Plaintiffs as past due from the moment it obtained servicing rights for their loan.

---

[7] *Anathapadmanabhan v. BSI Financial Services, Inc*, Case No. 26 C 5412, 2015 WL 8780579, at *2-4 (E.D. Illinois, Dec. 15, 2015) (BSI sent multiple collection letters to plaintiffs demanding payment of pre-petition debt).

[8] *Armani v. TransUnion, et al.*, Case No. 3:15-cv-00066, 2016 WL 4098540, at *1-2 (W.D. Va., July 28, 2016) (Plaintiff alleged BSI improperly reported to the credit bureaus regarding his mortgage loan account).

[9] Specifically, the Consent Order also requires that BSI must, among other things,  (a) establish and maintain servicing systems, policies and procedures designed to ensure, among other things, that BSI can identify all loan-level information necessary for proper servicing and obtain from prior mortgage servicers such information in a format compatible with its servicing systems; (b) enhance and update its oversight and compliance systems to promptly identify and correct potential servicing errors and violations of Federal consumer finance laws, including establishment or enhancement of policies and procedures to timely investigate, respond to, and correct servicing errors in response to complaints by borrowers.  Exhibit 69 at ¶ 61(a)-(d).

238.    Upon information and belief, BSI also has a pattern and practice of failing to review the mortgage loan accounts of borrowers in bankruptcy upon acquiring servicing of such mortgage loan accounts from other servicers.  Specifically, upon information and belief, BSI has no policy or procedure that requires a review, audit, or investigation to ensure that prior servicers complied with the Bankruptcy Code and Rules and orders of the bankruptcy courts with respect to the accounts of borrowers in bankruptcy.

239.    Equifax, months after receiving the Equifax dispute letters for both Plaintiffs, finally completed its reinvestigation on October 22, 2022.

240.    A copy of the Equifax reinvestigation results is attached hereto as **Exhibit 70**.

241.    It is unclear whether the Equifax reinvestigation results refer to the Equifax Credit Dispute by Leah Lorenzo or Rogelio Lorenzo (or both), because the results are addressed to the undersigned counsel and the Confirmation Number listed on the reinvestigation result does not match any of the reference numbers included in the original dispute letters.

242.    Per the October 22, 2022 Equifax Reinvestigation, Equifax states that "We have researched the credit account. Account # - *0274 The Results are: THIS ITEM HAS BEEN DELETED FROM THE CREDIT FILE."

243.    Although Equifax deleted the negative reporting, the damage had already been done.  Equifax deleted the trade line in October of 2022, which was six months after Plaintiffs sent their dispute letters in April of 2022.   This was an additional six months of incorrect, negative reporting, on top of the initial incorrect reporting from July 2020 through May of 2021.

244.    Plaintiffs have been injured by Defendants' actions as described herein.  Plaintiffs just emerged from bankruptcy and are in need of accessing credit markets.  BSI's credit reporting has negatively impacted Plaintiffs' ability to obtain credit.

245.    Plaintiffs have suffered reputational damage as a result of the improper negative credit reporting, which severely limited their access to credit as they emerged from their Chapter 13 case.  After Plaintiffs became aware of the incorrect reporting, they attempted multiple soft inquiries in 2021 which showed that they would be denied credit.  They were finally able to obtain a credit card in November of 2022 (Capital One), but the interest rate was 26.99%, which is at the very highest end of the range for this credit card.

246.    In addition to suffering reputational harm and damaged credit, Plaintiffs were overcharged for their monthly mortgage payment based on BSI's improper accounting.

247.    BSI's lien against Plaintiffs' home was also unlawfully increased as a result of BSI's overcharging Plaintiffs for amounts they did not owe.

248.    Plaintiffs have lost faith in the bankruptcy system because they feel they have been denied a fresh start after they completed their five-year Chapter 13 plan in good faith and received their bankruptcy discharge.

249.    As described herein, Plaintiffs suffered emotional distress damages as a result of BSI's unlawful demands for payment of amounts which Plaintiffs did not owe and based on the threats of foreclosure.

250.    In addition, in late 2020, Mrs. Lorenzo began to experience an increase in the frequency of sleep disturbance.  The mental and emotional distress caused by receiving default notices from BSI for amounts she did not owe contributed substantially to Mrs. Lorenzo's sleep disturbance.  This condition became so severe that her primary care physician recommended treatment of her insomnia during this time.  As a result, Mrs. Lorenzo started on melatonin that was double the standard dose.

251.    Mrs. Lorenzo's primary care physician also believed that her insomnia was contributing to Mrs. Lorenzo's elevated blood pressure, which her physician recorded in 2020. Accordingly, Mrs. Lorenzo's physician prescribed lisinopril in late 2020 to treat her high blood pressure.  Her physician later switched her prescription to losartan due to frequent coughing, a common side effect of lisinopril.  By 2021, she was officially diagnosed with essential hypertension.

252.    The financial stresses cause by BSI's erroneous demands has also led to frequent arguments between Plaintiffs.

253.    Plaintiffs' eldest son can attest to the mental strain placed on Plaintiffs as a result of BSI's unlawful demands for payment and the credit issues.  Plaintiffs' son witnessed several events where Mrs. Lorenzo was crying due to the financial stress and the threat of potentially losing their home.

254.    Plaintiffs have also incurred out-of-pocket expenses as a result of Defendants' bad acts, including melatonin and prescription medications, insurance co-pays, higher interest rates, and mileage to and from their attorneys' office to discuss BSI's bad acts and how to remedy same.

255.    Plaintiffs incurred postage costs relating to the credit disputes and RESPA correspondence as outlined herein.

256.    Plaintiffs have also incurred attorneys' fees and expenses in connection with the RESPA correspondence and credit disputes described herein.

257.    Plaintiffs seek redress for these damages in amounts to be determined at trial.

## V.  CAUSES OF ACTION

### COUNT I
### CONTEMPT
### (AS TO DEFENDANTS BSI AND THE TRUST)

258.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

259.    As described herein, BSI has violated Plaintiffs' Chapter 13 plan, the order confirming the plan, the Agreed Order conditioning relief from the automatic stay, and the March 12, 2020 discharge order.

260.    Similarly, BSI failed to update its account records to reflect the Bankruptcy Court's Agreed Order on August 17, 2016.

261.    Because BSI's conduct described herein was performed as servicer for and on behalf of the Trust (US Bank) in connection with the Plaintiffs' property, the Trust is also liable for BSI's actions.

262.    BSI and the Trust are sophisticated creditors and mortgage servicers.  BSI and the Trust know about and are legally obligated to comply with the Bankruptcy Court's orders and the provisions and purposes of the Bankruptcy Code and Rules.  BSI and the Trust's misapplication of payments and attempts to collect unlawful amounts were prohibited by these orders, and BSI and the Trust had no fair ground of doubt that its bad acts were direct violations of the Court's orders, as well as violations of federal and state law.

263.    BSI's and the Trust's actions can be remedied pursuant to this Court's inherent authority, as well as under and pursuant to 11 U.S.C. § 105(a).

264.    Plaintiffs were damaged as a result of BSI's and the Trust's contempt of the discharge order, incurring reputational harm, damaged credit, being overcharged for their monthly

mortgage payment, suffering emotional distress over the risk of losing their home over money they did not owe, out of pocket expenses, postage, mileage, and attorneys' fees resulting from BSI's and the Trust's contempt of the Bankruptcy Court's orders and the discharge injunction set forth in §524(i) of the Bankruptcy Code.

265.    Plaintiffs respectfully request that this Court find BSI and the Trust in contempt, and that the Court use its inherent and statutory powers to award Plaintiffs actual damages, sanctions, punitive damages, and attorneys' fees and costs.

## COUNT II
### VIOLATION OF THE DISCHARGE INJUNCTION
### PURSUANT TO 11 U.S.C. § 524(i)
### (AS TO DEFENDANTS BSI AND THE TRUST)

266.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

267.    Defendants BSI and the Trust willfully failed to adjust their records to comply with the August 17, 2016 Agreed Order in the Bankruptcy Case.

268.    Plaintiffs completed their confirmed Chapter 13 plan.

269.    BSI filed its response to the Trustee's Notices of Final Cure on February 20, 2020, alleging, falsely, that the Plaintiffs were behind $2,784.56 in post-petition payments.

270.    BSI, immediately before and after Plaintiffs received their Chapter 13 discharge, began to treat Plaintiffs' mortgage loan account as in default and made demand for payment of amounts Plaintiffs did not owe.

271.    BSI failed to adjust Plaintiffs' mortgage loan account to reflect the Agreed Order, and it failed to properly apply properly the payments received from Plaintiffs and the Chapter 13 Trustee.

272.    BSI's failure to adjust Plaintiffs' account based on the amount stated in the Agreed Order and its failure to properly apply Plaintiffs' payments has materially damaged Plaintiffs by placing them at risk of losing their home to foreclosure and causing significant damage to their credit.

273.    BSI's failure to properly apply the payments resulted in additional interest accruing and an improperly increased loan balance, which is secured by a lien against Plaintiffs' homestead, among other harms, including without limitation all of the damages set forth in this complaint.

274.    BSI violated 11 U.S.C. §524(i). BSI and the Trust are sophisticated creditors and mortgage servicers.  BSI and the Trust know about and are legally obligated to comply with the Bankruptcy Court's orders and the provisions and purposes of the Bankruptcy Code and Rules. There is no fair ground of doubt that BSI's misapplication of Plaintiffs' payments, failure to promptly adjust the accounting to reflect the payment adjustments in the Agreed Order attempts to collect unlawful amounts were prohibited by these orders.

275.    On information and belief, BSI's conduct is part of a general pattern and practice of misconduct by BSI, which is either expressly authorized by, or not specifically prohibited by, its policies and procedures as actually implemented by BSI's personnel.

276.    Because BSI's conduct described herein was performed as servicer for and on behalf of the Trust in connection with the Plaintiffs' property, the Trust is also liable for BSI's actions.

277.    Plaintiffs have been damaged by the conduct of BSI and the Trust and therefore seek an award of sanctions, declaratory relief, and all appropriate damages and other recovery, including but not limited to actual damages, punitive damages, and attorneys' fees and costs

pursuant to the Court's inherent powers and its statutory 11 U.S.C. § 105(a) powers for BSI's and the Trust's willful and wanton violations of the discharge injunction.

<u>**COUNT III**</u>
**VIOLATION OF THE CHAPTER 13 PLAN AND ORDER CONFIRMING THE PLAN**
**(AS TO DEFENDANTS BSI AND THE TRUST)**

278.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

279.    11 U.S.C. § 1322(b)(5) allows a Chapter 13 debtor to cure deficiencies and maintain regular monthly mortgage payments.  Section 1327 of Title 11 of the United States Code provides: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

280.    Plaintiffs' confirmed Chapter 13 plan provided that the Chapter 13 Trustee would make payments on Plaintiffs' pre-petition arrearage and that Plaintiffs would make their post-petition monthly mortgage payments directly to BSI's predecessor (and to BSI, after transfer to same).

281.    BSI violated Plaintiffs' plan and the order confirming the plan by failing to apply payments pursuant to Plaintiffs' Chapter 13 plan.  Specifically, BSI failed to properly update their records to reflect the Bankruptcy Court's Agreed Order and Plaintiffs' modified plan and subsequently failed to apply Plaintiffs' payments pursuant to the Plan in such a manner that Plaintiffs would emerge from their bankruptcy with a current mortgage loan.

282.    BSI thus violated 11 U.S.C. § 1327 and other provisions of the Bankruptcy Code and Rules, Plaintiffs' confirmed Chapter 13 plan, the order confirming the plan, the discharge order, and other motions, directives, and orders of the Bankruptcy Court.

283.    Title 11 U.S.C. § 105(a) of the Code grants power to the Court to remedy BSI's violations of numerous sections of Chapter 13 of the Bankruptcy Code.  Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of Bankruptcy Code provisions, including the granting of sanctions for contempt, the granting of monetary relief for actual and statutory damages, punitive damages, attorneys' fees and costs, and the imposition of temporary and permanent injunctions.

284.    BSI's actions in applying payments contrary to the provisions in Plaintiffs' Chapter 13 plan, the Agreed Order, and the modified Plan were willful violations of the plan, the order confirming the plan, other orders of the Bankruptcy Court, the provisions of Chapter 13 of the Bankruptcy Code, and the Bankruptcy Rules.

285.    BSI knew of the existence of these provisions, orders, rules, and obligations.  BSI's acts as described herein were intentional, willful, and in flagrant violation of the provisions and purposes of the Bankruptcy Code and Rules.

286.    On information and belief, BSI's conduct as described herein is part of a broader pattern and practice of misconduct, which is either expressly authorized by, or not specifically prohibited by, its policies and procedures, and which is demonstrative of a workplace culture that actively discourages appropriate remedial action even when it is clearly required by applicable law and specific court orders.

287.    It is consistent with BSI's policies and procedures to ignore the directives and orders of bankruptcy courts and the Bankruptcy Code and Rules in the manner described in this complaint.

288.    Plaintiffs have suffered damages due to BSI's misconduct, including but not limited to mental anguish, emotional distress, actual damages, nominal and incidental damages, mileage

damages, lost wages, lost equity, damage to credit, overcharges for monthly mortgage payment amounts, and attorneys' fees and costs in attempting to rectify BSI's violations.

289.    Because BSI's conduct described herein was performed as servicer and/or sub-servicer for and on behalf of the Trust in connection with the Plaintiffs' property, the Trust is also liable for BSI's actions.

290.    Accordingly, under § 105 and/or the Court's inherent authority, BSI and the Trust should be sanctioned in an appropriate amount, required to compensate Plaintiffs for all damages resulting from their misconduct, and made to pay Plaintiffs' reasonable attorneys' fees and expenses for bringing this action.

## COUNT IV
## VIOLATION OF FED. R. BANKR. P. 3002.1
## (AS TO DEFENDANTS BSI AND THE TRUST)

291.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

292.    Fed. R. Bankr. P. 3002.1 became effective on December 1, 2011.

293.    Pursuant to Fed. R. Bankr. P. 3002.1(g), a mortgage servicer/holder must file a response to a notice of final cure payment within 21 days of service of such notice.  Fed. R. Bankr. P. 3002.1(g).  The response must state whether the debtor has paid the arrearage amount in full and whether the debtor is current on post-petition payments.  *Id.*

294.    Fed. R. Bankr. P. 3002.1(i) provides that if a holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions:

   a.    Preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that failure was substantially justified or harmless; or

b.      Award other appropriate relief, including reasonable expenses and attorneys' fees caused by the failure.

295.    As described above, BSI filed a response to the notice of final cure filed in Plaintiffs' Chapter 13 bankruptcy, which falsely stated that Plaintiffs had failed to cure the pre-petition arrearage and was not current on their post-petition payments.

296.    Contrary to BSI's assertions that Plaintiffs had failed to make all plan payments or otherwise cure all arrearages, BSI subsequently agreed that Plaintiffs were current in response to Plaintiffs' NOE dated June 18, 2021. *See* Ex. 34.  As stated herein, however, BSI failed to correct its accounting back to its original error, but instead corrected its accounting through a book entry entered after it received Plaintiffs' NOE in April of 2022.

297.    The failure to disclose accurately these allegedly past due amounts is not harmless, as BSI's negative credit reporting and attempts to collect the alleged past due amounts have caused significant harm to Plaintiffs.

298.    Upon information and belief, BSI's conduct as described herein is part of a general pattern and practice of conduct by BSI, which is either expressly authorized by, or not specifically prohibited by, its policies and procedures. Alternatively, to the extent BSI's misconduct described herein is prohibited by any policy or procedure of BSI, in practice, BSI personnel do not comply with such policies and/or procedures, and BSI does not require its personnel to follow such policies and/or procedures.

299.    Pursuant to 3002.1(i), BSI should be prohibited from introducing any evidence regarding alleged unpaid amounts as of the date it filed its false response to the Chapter 13 Trustee's Notice of Final Cure or at any relevant time herein.  Further, the Court should order BSI and the Trust to correct its accounting with respect to Plaintiffs' mortgage loan from the beginning of the loan.

300.    The Court should also sanction BSI and the Trust for their violations of Fed. R. Bankr. P. 3002.1(g) pursuant to Fed. R. Bankr. P. 3002.1(i).  As noted by the Court in *Blanco v. Bayview Loan Servicing LLC (In re Blanco)*, 633 B.R. 714, 745-46 (Bankr. S.D. Tex. 2021), Rule 3002.1(i) explicitly empowers a court to impose sanctions. (citing Fed. R. Bankr. P. 3002.1 Advisory Committee Note (2011)("Even the advisory committee notes recognize that a chapter 13 debtor who has made all plan payments and whose case has been closed may move to have the case reopened for purposes of seeking sanctions under Rule 3002.1(i).")  The Court also can and should use its § 105(a) powers to sanction Defendants for their violations of Fed. R. Bankr. P. 3002.1.

301.    Plaintiffs have incurred, and seek that the Court award, their actual damages, out of pocket expenses, mental and emotional distress damages, overcharges for monthly mortgage payment amounts, reputational damages, lost equity, and their attorneys' fees for filing and prosecuting this action pursuant to Fed. R. Bankr. P. 3002.1(i).

## COUNT V
## VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT
## (AS TO DEFENDANT BSI)

302.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

303.    In January 2013, the Consumer Financial Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

304.     Specifically, on February 14, 2013, the CFPB issued the Amended Real Estate Settlement Procedures Act (Regulation X) ("RESPA"), 78 FR 10695 (Regulation X) (February 14, 2013).  This Regulation became effective on January 10, 2014.

305.     BSI is subject to the Regulations and does not qualify for any of the exceptions noted in the Regulations.

306.     Regulation X's requirements incorporate the requirements of Regulation Z (the Truth in Lending Act's implementing regulation), and as such, a servicer's violation of a requirement in Regulation Z constitutes an error that the servicer must correct pursuant to the requirements of Regulation X.

307.     Plaintiffs' counsel sent a NOE dated April 14, 2021 to BSI at its designated address, which demanded that BSI correct Plaintiffs' mortgage loan account and fix incorrect reporting to the Credit Reporting Agencies.  *See* Ex. 29.  The April 14, 2021 NOE constitutes a valid RESPA Notice of Error pursuant to 12 U.S.C. § 1024.35(a).

308.     BSI failed to conduct a reasonable investigation in response to Plaintiffs' April 14, 2021.  BSI failed to correct Plaintiffs' mortgage account completely or update its credit reporting to accurately reflect that Plaintiffs had remained current for the entire reporting period in response to the April 14, 2021 NOE.  Therefore, BSI is in violation of 12 C.F.R. § 2605(e)(2)(A), as well as 15 U.S.C. § 1639f and Reg Z, 12 C.F.R. § 1024.35(e)(1)(A).

309.     BSI merely adjusted the accounting on Plaintiffs' mortgage account to show Plaintiffs current as of June 8, 2021, but BSI failed to correct its accounting prior to that date.

310.     BSI failed to report to the Credit Reporting Agencies that Plaintiffs were current at all times from the Agreed Order through June of 2021.

311.    As a result of these violations of law, Plaintiffs have been damaged.  In particular, because BSI failed to correct their account completely upon receipt of the proper demand through their April 14, 2021 NOE, Plaintiffs were compelled to hire the undersigned to force BSI to correct his account and comply with the Bankruptcy Court's orders.  Thus, Plaintiffs' damages include amounts for Plaintiffs' attorneys' fees relating to the drafting of subsequent RESPA correspondence.

312.    BSI's failure to correct Plaintiffs' account has further damaged Plaintiffs because BSI's failure to correct Plaintiffs' credit reporting has prevented Plaintiffs from obtaining credit.

313.    BSI's failure to credit Plaintiffs' account promptly has also unlawfully increased the amount of the Trust's lien against Plaintiffs' property.

314.    Plaintiffs have also incurred out-of-pocket expenses relating to BSI's failure to respond to the Plaintiffs' April 14, 2021 NOE appropriately, including its failure to attach a pay history in its June 18, 2021 response, despite a statement that it had attached a pay history.

315.    These out-of-pocket expenses include postage and copy charges paid to send their October 14, 2021 NOE in which they asserted the BSI had failed to attach a pay history to its June 18, 2021 response. *See* Ex. 35.

316.    Plaintiffs also incurred non-litigation legal fees and expenses in connection with their attorneys having to draft and send the October 14, 2021 NOE.

317.    Plaintiffs sent the October 14, 2021 NOE to BSI's designated address.

318.    The October 14, 2021 NOE constitutes a valid RESPA Notice of Error pursuant to 12 C.F.R. § 1024.35.

319.    Plaintiffs also suffered emotional distress damages, based on the fact that BSI failed to correct their account appropriately and report their account correctly to the credit bureaus.

320.    As a result of BSI's failure to respond appropriately to these RESPA letters, Plaintiffs have been damaged in amounts which include Plaintiffs' pre-litigation attorneys' fees relating to the review of BSI's deficient responses, increased emotional distress damages, continued damage to their credit and reputation, overcharges for their monthly payment amounts, and Plaintiffs' out-of-pocket expenses relating to BSI's failure to respond appropriately or completely to said NOEs, including postage and copy charges in sending the NOEs.

321.    More importantly, BSI failed to repeatedly refused to correct and/or credit Plaintiffs' mortgage account in response to Plaintiffs' NOEs, and therefore BSI is in violation of 12 U.S.C. § 2605(e)(2)(A), as well as 15 U.S.C. § 1639f.  BSI's failure to correct Plaintiffs' account appropriately has damaged Plaintiffs.

322.    Moreover, when BSI finally admitted that there was an error with respect to Plaintiffs' account, it failed to correct Plaintiffs' mortgage loan account appropriately and failed to correct its previous credit reporting regarding Plaintiffs' mortgage loan account.

323.    Upon information and belief, BSI failed to conduct a reasonable investigation with respect to Plaintiffs' account.

324.    BSI's failure to respond fully and appropriately to Plaintiffs' RESPA correspondence prior to the filing of this complaint violates 12 U.S.C. § 2605.

325.    BSI has demonstrated a pattern and practice of failing to comply with RESPA by failing to appropriately respond to Plaintiffs' Notices of Error and by its noncompliance with 12 U.S.C. § 2605.

326.    More to the point, BSI's conduct demonstrates that it has no real practice or process for identification and remediation of legitimate borrower complaints.

327.    Instead, BSI simply treats its obligations to investigate and respond to RESPA correspondence as an assembly line task to be completed by insisting that its conduct was proper, instead of actually investigating and addressing the issues its customers' raise in RESPA correspondence.

328.    Accordingly, BSI is liable to Plaintiffs for actual damages, costs, attorneys' fees, and statutory damages of up to $2,000.00 per violation, pursuant to 12 U.S.C. § 2605.

### COUNT VI
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AS TO DEFENDANT BSI)

329.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

330.    Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

331.    BSI is a "furnisher" of consumer information as defined by 12 CFR § 1022.41(c) and as described throughout the Fair Credit Reporting Act ("FCRA"), as BSI regularly reports consumer account information to the Credit Reporting Agencies for inclusion in credit reports.

332.    BSI willfully violated 15 U.S.C. § 1681s-2(b) by failing to adequately investigate and correct inaccurate credit reporting information with the Credit Reporting Agencies following the Plaintiffs' formal reinvestigation requests with the Credit Reporting Agencies under 15 U.S.C. § 1681i.

333.    Plaintiffs submitted dispute letters to the Credit Reporting Agencies in March and April of 2022, including information relating to Plaintiffs' bankruptcy filing, discharge, and payment records to support their allegations of incorrect reporting, as well as other relevant information.  *See* Exhibits 44-45, 57-60.

334.    BSI received copies of Plaintiffs' dispute letters to the Credit Reporting Agencies in March and April of 2022.  *See* Exhibits 46, 48 and 62.

335.    On information and belief, BSI received an inquiry from each credit reporting agency as part of the Credit Reporting Agencies' investigations into each dispute letter submitted by Plaintiffs.

336.    BSI failed to adequately investigate Plaintiffs' disputes raised in their letters to the Credit Reporting Agencies.

337.    BSI failed to review all relevant information provided by the Credit Reporting Agencies and by Plaintiffs in relation to each dispute letter sent to the Credit Reporting Agencies by Plaintiffs.

338.    BSI failed to conduct and report the results of a complete investigation into each dispute raised by Plaintiffs in their letters to the Credit Reporting Agencies.

339.    BSI failed to promptly delete, modify, or block reporting of inaccurate, incomplete, or unverifiable information in response to each dispute raised by Plaintiffs in their letters to the Credit Reporting Agencies.

340.    BSI failed to fully correct the information it supplied to the Credit Reporting Agencies regarding Plaintiffs' account.

341.    BSI's failure to correct fully its credit reporting for Plaintiffs' mortgage loan was willful, especially since it has admitted that it had failed to properly adjust Plaintiffs' mortgage loan account after Plaintiffs' completion of his Chapter 13 bankruptcy.

342.    BSI had ample notice of the nature of its errors and ample opportunity to correct its inaccurate credit reporting based on the information available to it, but it instead chose to continue furnishing inaccurate information to the Credit Reporting Agencies.

343.   BSI has breached its duties as set forth in 15 U.S.C. § 1681s-2(a) by failing to adequately investigate and fully correct inaccurate credit reporting information with the Credit Reporting Agencies following the Plaintiffs' numerous notifications and clarifications sent directly to BSI concerning the credit reporting errors.

344.   In the event that BSI submitted corrections to the Credit Reporting Agencies regarding Plaintiffs' account, it failed to correct its own records such that it would prevent re-reporting of the incorrect information in subsequent automatic system submissions to the Credit Reporting Agencies.

345.   Plaintiffs have suffered actual damages, including loss of access to credit and damage to their reputation, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of BSI's willful violations of the Fair Credit Reporting Act.

346.   Based on BSI's violations of 15 U.S.C. § 1681s-2(b), Plaintiffs are entitled to actual damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1681o.

347.   BSI's willful conduct entitles Plaintiffs to statutory and punitive damages under 15 U.S.C. § 1681n, in addition to actual damages, costs, and attorneys' fees.

<u>**COUNT VII**</u>
**VIOLATION OF THE FAIR CREDIT REPORTING ACT**
**(AS TO DEFENDANTS EQUIFAX, TRANSUNION, AND EXPERIAN)**

348.   The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

349.   Plaintiffs are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

350.   Experian, TransUnion, and Equifax each qualify as a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) as each, "for monetary fees, dues, or on a cooperative nonprofit

basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

351. Plaintiffs submitted dispute letters to the Credit Reporting Agencies in March and April of 2022, including information regarding their Chapter 13 bankruptcy, *i.e.* the Agreed Order conditioning relief from the stay, the notice of final cure and BSI's response thereto, and their discharge order, and other information to support their allegations of inaccurate information contained in their credit reports.

352. The Credit Reporting Agencies failed to follow reasonable procedures to ensure maximum accuracy pursuant to 15 U.S.C. § 1681e(b), as evidenced by their reporting of the Plaintiffs' mortgage loan as up to ninety (90) days past due, contrary to the discharge order, which is public record.

353. Upon information and belief, the Credit Reporting Agencies' inaccurate reporting of mortgage loan debts as past due after receiving a bankruptcy discharge is part of a pattern and practice of noncompliance with 15 U.S.C. § 1681e(b) with respect to this type of debt.

354. The Credit Reporting Agencies failed to modify or delete all inaccurate, incomplete, or unverifiable information, pursuant to 15 U.S.C. § 1681i(a)(5), after inaccuracies were brought to their attention by Plaintiffs in their March/April 2022 dispute letters and after receiving documentation of those inaccuracies.

355. The Credit Reporting Agencies failed to consider information provided by Plaintiffs in support of their claims of inaccuracies in reported information, pursuant to 15 U.S.C. § 1681i(a)(4).

356.    Upon information and belief, the Credit Reporting Agencies failed to follow their established reinvestigation procedures pursuant to 15 U.S.C. § 1681i.

357.    The Credit Reporting Agencies' conduct as described herein fell below, or breached, the standard of care of a reasonable or prudent person in the circumstances, as industry practice and regulation dictate compliance with the provisions of the Fair Credit Reporting Act and the following of procedures each should have in place as required by the Fair Credit Reporting Act.[10]

358.    Alternatively, Plaintiffs contend that the Credit Reporting Agencies' conduct as described herein was made with malice, willful intent, and/or reckless disregard for the truth of information reported.

359.    Plaintiffs have suffered actual damages, including loss of access to credit and damage to their reputation, attorneys' fees, and out-of-pocket expenses, amongst others, and have suffered physically, mentally, and emotionally as a result of the Credit Reporting Agencies' willful violations of the Fair Credit Reporting Act as set forth herein.

360.    Based on the Credit Reporting Agencies' violations of 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(5), 15 U.S.C. § 1681i(a)(4), and 15 U.S.C. § 1681i, Plaintiffs are entitled to actual damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1681o.

361.    The Credit Reporting Agencies' conduct, if found to be with malice, willful, or reckless, entitles Plaintiffs to statutory and punitive damages under 15 U.S.C. § 1681n, in addition to actual damages, costs, and attorneys' fees.

---

[10] Indeed, the Congressional findings and statement of purpose codified at 15 U.S.C. § 1681 states that the purpose of the FCRA is "to require that consumer reporting agencies *adopt reasonable procedures* for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title." 15 U.S.C. § 1681(b) (emphasis added).

## COUNT VIII
## BREACH OF CONTRACT
## (AS TO DEFENDANTS BSI AND THE TRUST)

362.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

363.    The Note and Deed of Trust constitute a valid contract between Plaintiffs and the Trust/BSI.

364.    Plaintiffs complied with their obligations under the loan contact.

365.    Paragraph 16 of the contract requires compliance with applicable state and federal laws, which includes the Bankruptcy Code, Regulation X, and Regulation Z.  *See* Exhibit 1. Defendants BSI and the Trust breached the contract by demanding amounts that Plaintiffs did not owe by virtue of their bankruptcy and discharge, specifically the alleged past-due amounts. Paragraph 4 of the Note requires that Plaintiffs authorize a principal only payment in writing.  In an attempt to correct the accounting on Plaintiffs' mortgage loan account, BSI and the Trust applied amounts to reduce principal and to future payments without Plaintiffs' written authorization or consent.  Moreover, BSI and the Trust have also violated the contract by failing to comply with their obligations under RESPA, as described above.

366.    Plaintiffs, as described herein, have been damaged by BSI's and the Trust's failure to comply with the terms of the Note and Deed of Trust.

367.    Plaintiffs are entitled to damages for such breach, as well as attorneys' fees under TEX. CIV. PRAC. & REM. CODE § 38.001.

368.    Pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001, Plaintiffs hereby request that they be awarded attorneys' fees for bringing this action.

<u>COUNT IX</u>
**VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT
(AS TO DEFENDANTS BSI AND THE TRUST)**

369.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

370.    Plaintiffs are consumers for purposes of the Texas Debt Collection Act ("TDCA") (Tex. Fin. Code Ann. § 391.001 et seq.)

371.    Defendants BSI and the Trust are debt collectors for purposes of the TDCA, because they are persons "who directly or indirectly engage[ ] in debt collection." Tex. Fin. Code Ann. § 392.001(6); *see also, Holt v Ocwen Loan Servicing, LLC*, 3:13-cv-120, 2013 WL 7211759, at *2 (S.D. Tex. December 12, 2013)(distinguishing between the more expansive definition of "debt collector" under TDCA § 392.001(6) and the definition "third-party debt collector" under § 392.001(7), which adopts the more restrictive definition of debt collector under the FDCPA.)

372.    BSI is a third-party debt collector for purposes of the TDCA because it acquired servicing rights for Plaintiffs' loan on or about June 26, 2017, and the loan was in pre-petition and post-petition default at the time BSI acquired servicing rights.  2015 Trevino.  Tex. Fin. Code Ann. § 392.001(7)(adopting the FDCPA definition of "debt collector"); *see also, Holt v Ocwen Loan Servicing, LLC*, 2013 WL 7211759, at *2, *Trevino v. HSBC Mortgage Services, Inc. (In re Trevino)*, 535 B.R. 110, 135 (Bankr. S.D. Tex. 2015)(holding that mortgage servicer was a "debt collector" under more restrictive FDCPA definition because it acquired the loan while it was in default.)

373.    The Trust is a third-party debt collector for purposes of the TDCA because it acquired ownership of Plaintiffs' loan on or about June 26, 2017, and the loan was in pre-petition and post-petition default at the time they acquired that loan. *Id*.

374.    The debt in question is a consumer debt for the purposes of the TDCA.

375.    Defendants BSI and the Trust have violated § 392.304(a)(8) because they misrepresented the amount of Plaintiffs' mortgage debt in the communications BSI and the Trust sent seeking to collect the debt.

376.    Defendants BSI and the Trust have also violated §329.304(19) of the TDCA because they used numerous false representations in attempting to collect the debt, and because they failed to acknowledge and follow bankruptcy laws that prevented them from seeking the false past due amounts that they did not owe, which BSI and the Trust have attempted to collect, and actually collected, from Plaintiffs. Specifically, BSI and the Trust are in violation of the TDCA as to the March, April and May 2021 mortgage statements (*see* Exhibit 17) and the March 13, 2021 Notice of Default (*see* Exhibit 21) and the April 10, 2021 Notice of Default (*see* Exhibit 22).

377.    BSI and the Trust's actions as described herein are inherently deceptive attempts to collect on the debt.

378.    In addition, § 392.202(b) of the TDCA provides that, not later than the thirtieth (30th) day after the date a notice of inaccuracy is received from a consumer, a debt collector who initiates an investigation shall send a written statement to the consumer making the dispute which either denies the inaccuracy, admits the inaccuracy, or states that the debt collect has not had sufficient time to complete an investigation of the accuracy.

379.    Defendant BSI is in violation of § 392.202(b) because it failed to respond to Plaintiffs' TransUnion, Equifax and Experian credit dispute letters within thirty (30) days from the day BSI received those dispute letters.  *See* Exhibits 44-46, 48-50, 57-60, 62-63, 67 and 68.

380.    Further, BSI is in violation of § 392.202(b) because it did not timely respond to Plaintiffs' April 14, 2019 NOE, which identified BSI's incorrect accounting and demanded that

BSI "immediately correct your reporting of the Lorenzos' mortgage loan account to the credit reporting agencies." *See* Exhibit 29.   Indeed, BSI did not respond to Plaintiffs' April 14, 2019 NOE until June 18, 2021, which approximately one month *after* the expiration of the thirty-day deadline in § 392.202(b) of the TDCA, and more importantly, while BSI admitted that its accounting was incorrect, BSI did not address the credit reporting issues in its June 18, 2021 response. *See* Exhibit 34.

381.    Pursuant to § 392.403(a)(1) of the TDCA, Plaintiffs are entitled to an injunction against Defendants to prevent and restrain them from future violations of the TDCA.

382.    Pursuant to §392.403(a) and (b) of the Texas Debt Collection Act, Plaintiffs are entitled to recover actual damages, exemplary damages, and reasonable attorneys' fees for pursuing these claims against Defendants BSI and the Trust.

## COUNT X

### DEFAMATION
### (AS TO DEFENDANT BSI)

383.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

384.    BSI provided statements of fact regarding the Plaintiffs, their payment history, and the status of Plaintiffs' mortgage loan account to the Trust to be published to the investors in the US Bank Trust, and BSI furnished false information regarding the status of Plaintiffs' mortgage loan that BSI intended to be published through the Credit Reporting Agencies.

385.    BSI may be held liable for the Trust's and the Credit Reporting Agencies' republication of the false and defamatory statements regarding Plaintiffs' mortgage loan account because BSI's actions created a reasonable risk that the defamatory matter would be communicated to other parties by the Credit Reporting Agencies.

386.    BSI's published statements referring to the Plaintiffs and their performance of their obligations on their mortgage loan were false.

387.    The published statements were defamatory, as the false statements constituted an invasion of the Plaintiffs' interests in their reputation and good name.

388.    The publication of such false statements of fact about the Plaintiffs, their payment history, and the status of the Plaintiffs' mortgage loan account was done with actual malice and/or willful intent to injure Plaintiffs.

389.    Actual malice is defined as publishing a statement with knowledge of or reckless disregard for its falsity.  *See New York Times v. Sullivan*, 376 U.S. 254, 279-280 (1964); *Neely v. Wilson*, 418 S.W. 3d 52, 61 (Tex. 2013); *Turner v. KTRK TV, Inc.*, 38 S.W. 3d 103, 120 (Tex. 2000); *Bentley v. Bunton*, 94 S.W. 3d 561, 591 (Tex. 2002).

390.    BSI acted with actual malice and/or willful intent to injure the Plaintiffs because it willfully provided for publication of false information regarding the Plaintiffs, their payment history, and the status of Plaintiffs' mortgage loan account with knowledge of the falsity of such information, having been informed of the truth repeatedly by Plaintiff.  BSI has even subsequently admitted that its accounting for Plaintiffs' mortgage loan account was in error.

391.    BSI's publication of the false information regarding the Plaintiffs, their payment history, and the status of Plaintiffs' mortgage loan account was also done with reckless disregard for the truth, which is demonstrated by BSI's pattern of ignoring Plaintiffs' repeated disputes of such information as set forth above.

392.    BSI's malice may be inferred from the fact that BSI continually published false and misleading information regarding the Plaintiffs, their payment history, and the status of Plaintiffs'

mortgage loan account to the Trust and the Credit Reporting Agencies and by its failure to correct such statements after being specifically informed of the falsity of such information.

393.   BSI provided for publication the defamatory information both before and after notification of the falsity of such information by the Plaintiffs.  Additionally, each time the false statements were presented to a third party, in the form of investor reporting and credit inquiries, a new publication occurred.

394.   Plaintiffs have suffered actual damages, including lack of access to credit, attorneys' fees, and out-of-pocket expenses, amongst others, and has suffered physically, mentally, and emotionally as a result of BSI's publication of defamatory statements.

395.   Plaintiffs are entitled to actual and punitive damages as a result of BSI's malicious publication of defamatory statements regarding Plaintiffs.

### COUNT XI
### NEGLIGENCE
### (AS TO DEFENDANTS BSI AND THE TRUST)

396.   The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

397.   In a mortgagor-mortgagee relationship, a lender owes a borrower the duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower.  *Hurd v. BAC Loan Servicing, LP*, 880 F. Supp.2d 747, 763 (N.D. Tex. 2012) (citing *Thrash v. Ocwen Loan Servicing, LLC*, 433 B.R. 585, 598-97 (Bankr. N.D. Tex. 2010).  *See also Lukasik v. San Antonio Blue Haven Pools, Inc.*, 21 S.W.3d 394, 403 (Tex. App.—San Antonio 2008, no pet.)(citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)(Every person has a duty to exercise reasonable care to avoid foreseeable risk of injury to others.)); *Trevino v. HSBC Mortgage Services, Inc. (In re Trevino)*, 535 B.R. 110, 150-151 (Bankr. S.D. Tex. 2015).

398.    Defendant BSI has breached this duty by failing to promptly make adjustments to Plaintiffs' mortgage loan account required by the Bankruptcy Court's Agreed Order and by virtue of Plaintiff receiving their Chapter 13 discharge.  Further, BSI repeatedly demanded that Plaintiffs pay amounts that they do not owe and has threatened Plaintiffs with foreclosure if such amounts were not paid.

399.    Finally, the Trust has failed to properly supervise BSI's servicing of Plaintiffs' mortgage loan account.  Upon information and belief, the Trust has taken no action to ensure that either BSI serviced Plaintiffs' mortgage loan properly and in a manner that complied with the Bankruptcy Code and other applicable laws.

400.    Plaintiffs have suffered actual damages as described herein, including denial of credit, attorneys' fees, and out-of-pocket expenses, amongst others, and he has suffered mentally and emotionally as a result of BSI's and the Trust's breach of their duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower.

401.    Plaintiffs would not have incurred the damages listed above but for BSI's and the Trust's breach of their duty as described herein.

402.    BSI and the Trust knew or should have known that their actions as described herein could cause injury to Plaintiffs.

403.    The Trust is liable for any false credit reporting made by BSI as servicer for and on behalf of the Trust in connection with Plaintiffs' property.

404.    Plaintiffs seek to recover his general damages related to BSI's and the Trust's negligence, as well as exemplary damages.

405.    Plaintiffs are entitled to actual damages, exemplary damages, and their reasonable attorneys' fees and costs for BSI's and the Trust's negligence.

## COUNT XII
## GROSS NEGLIGENCE
## (AS TO DEFENDANT BSI)

406.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

407.    Defendant BSI breached its duty to exercise reasonable care in avoiding foreseeable injury to Plaintiffs by failing to promptly make adjustments to Plaintiffs' mortgage loan account required by the Bankruptcy Court's Agreed Order and by virtue of Plaintiff receiving their Chapter 13 discharge.

408.    Plaintiffs were damaged as a result of BSI's breach of this duty. Plaintiffs have suffered actual damages as described herein, including denial of credit, attorneys' fees, and out-of-pocket expenses, amongst others, and they have suffered mentally and emotionally as a result of BSI's breach of the duty to exercise reasonable care to avoid a foreseeable injury to the borrower.

409.    BSI's failure to properly adjust Plaintiffs' mortgage loan account to comply with the Bankruptcy Court's orders and BSI's failure to properly report the status of Plaintiffs' payment history and mortgage loan account to the Credit Reporting Agencies objectively involved an extreme degree of risk and a high probability of substantial financial and emotional harm to Plaintiffs.

410.    BSI was aware of the risks involved with regard to these actions and omissions and proceeded with conscious indifference to Plaintiffs' rights and welfare, even after receiving notice of their errors from Plaintiffs.

411.    Plaintiffs seek to recover their general damages related to BSI's gross negligence, as well as exemplary damages.

412.    Plaintiffs are entitled to actual damages, exemplary damages, and their reasonable attorneys' fees and costs for BSI's gross negligence.

**REQUEST FOR ATTORNEYS' FEES**
**(AS TO ALL DEFENDANTS)**

413.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

414.    Through the conduct described herein, Defendants have inflicted actual damages upon Plaintiffs.

415.    Moreover, Plaintiffs have been forced to retain legal counsel, who has incurred reasonable and necessary attorneys' fees on their behalf.

416.    Such fees are properly taxed against Defendants by virtue of the Court's inherent powers, 11 U.S.C. § 105(a), for contempt of the statutory injunction in 11 U.S.C. §524(i), TEX. CIV. PRAC. & REM. CODE § 38.001, the TDCA, the FCRA, and RESPA.

**REQUEST FOR DECLARATORY RELIEF**

417.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

418.    As outlined in the preceding counts and the preceding factual allegations, BSI and the Trust have violated the Bankruptcy Code and Rules, the plan, and the order confirming the plan, the discharge injunction and the Bankruptcy Code's statutory discharge injunction.  Plaintiffs seek a declaration that BSI's and the Trust's actions as described herein violated the Bankruptcy Code, the Bankruptcy Rules, the order confirming Plaintiffs' Chapter 13 plan, the discharge order, and the statutory discharge injunction in 11 U.S.C. §§ 524(a) and (i).

419.    Plaintiffs are entitled to attorneys' fees and costs pursuant to the Federal Declaratory Judgment Act and 11 U.S.C. § 105(a).

## REQUEST FOR INJUNCTIVE RELIEF

420.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

421.    The actions of BSI and the Trust show that it is their policy, procedure, and practice to ignore the directives and orders of the bankruptcy courts and the Bankruptcy Code and Rules.

422.    Plaintiffs are entitled to an injunction requiring BSI to adjust Plaintiffs' mortgage loan account to properly apply all payments received at the time they were received and to properly report to the Credit Reporting Agencies.

423.    Plaintiffs are also entitled to an injunction requiring Equifax, Experian, and TransUnion to correct their credit reporting regarding Plaintiffs' mortgage loan account.

424.    Section 392.403 of the TDCA allows the Court to issue such an injunction.

425.    Title 11 U.S.C. § 105 of the Code grants power to the Court to remedy the harms caused by Defendants' violations of the Code and Rules, and orders of the bankruptcy courts. Section 105(a) allows the Court to exercise its equitable powers where necessary or appropriate to facilitate implementation of Code, including the granting of sanctions for contempt, injunctive relief, monetary relief for actual damages, including attorneys' fees and costs, and injunctive relief.

426.    Therefore, Plaintiffs seek injunctive relief as set forth above and that includes appropriate monetary sanctions, including payment of attorneys' fees and costs, for Defendants' violations as described herein.

## VIII. REQUEST FOR ACTUAL DAMAGES, STATUTORY DAMAGES, PUNITIVE DAMAGES AND SANCTIONS

427.    The allegations in the paragraphs above are re-alleged and incorporated herein by this reference.

428.    Plaintiffs are also entitled to statutory damages as set forth herein.

429.    As a result of Defendants' activities, Plaintiffs have incurred actual damages and attorneys' fees and costs.

430.    Such damages are properly taxed against Defendants pursuant to the Court's inherent powers and its 11 U.S.C. § 105(a) powers by virtue of Defendants' violations of 11 U.S.C. § 524(i).  Such damages are properly taxed against Defendants pursuant to the TDCA, and RESPA. Such attorneys' fees are also properly taxed against Defendants pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001.

431.    Plaintiffs seek that the Court award Plaintiffs their actual damages, statutory damages, and attorneys' fees and costs, hold BSI and the Trust in contempt, and impose all available penalties, sanctions, and punitive damages in an amount sufficient to deter Defendants from future misconduct.

## IX.  DEMAND FOR JURY TRIAL

432.    Plaintiffs requests a jury trial for any and all counts contained herein for which a trial by jury is permitted by law.

## X. PRAYER

WHEREFORE, Plaintiffs request that this Court grant the relief as requested herein in favor of Plaintiff by:

a)    Awarding Plaintiffs actual and statutory damages, including attorneys' fees and costs, to which Plaintiffs are entitled;

b)    Awarding Plaintiffs sanctions, declaratory and injunctive relief, actual damages, punitive damages, and attorneys' fees and costs for Defendants' violations of law;

c)    Finding BSI and the Trust in contempt under the Court's inherent powers and 11 U.S.C. § 105 for violations of the Bankruptcy Court's orders, the discharge injunction in 11 U.S.C. §524, and awarding Plaintiffs appropriate relief, including attorneys' fees and costs, sanctions, punitive damages and other such relief deemed appropriate by this Court;

d)    Awarding Plaintiffs pre-judgment and post-judgment interest, as well as reasonable attorneys' fees and costs; and

e)    Awarding such other relief as this Court may deem just and proper.

Respectfully submitted,

KELLETT & BARTHOLOW PLLC

*/s/ Theodore O. Bartholow, III ("Thad")*

Theodore O. Bartholow, III ("Thad")
State Bar No. 24062602
Karen L. Kellett
State Bar No. 11199520
Claude D. Smith
State Bar No. 24028778
11300 N. Central Expressway
Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com

**ATTORNEYS FOR PLAINTIFFS**